Hear ye, hear ye, hear ye. The United States Court of Appeals for the 5th Circuit is now open according to law. God save the United States in this honorable court. Good afternoon, counsel. I'm Judge Dennis, together with Judge Higginson and Judge Picasso. We'll be your panel in this case, first case for this afternoon, which is Maria Seigler v. Wal-Mart Stores TX. We'll begin with Mr. Taylor. Thank you, Justice Dennis. May it please the court. The court really has to decide two questions today. The first is, is this court bound by 60-plus years of Texas Intermediate appellate decisions in Hernandez, Kofall, McCaslin, and Bolton? And the answer there, I think, is a pretty quick yes under the Erie Doctrine. The second question is, given that we already have so many useful discovery tools for obtaining judicial admissions on mixed questions of law and fact, is this court now going to expand the so-called sham affidavit doctrine to make the deposition of a lay person a gotcha in that respect, especially when a party's counsel's role is so limited during the deposition process? And the answer there is the court should not allow that. That is what the district court did. And this court should reverse that. That was an abuse of discretion. So turning first to the Erie question, you know, the court obviously is bound by Texas's stare decisis, which means the court then has to answer the question the way the Texas Supreme Court would if it considered it. And that's Hux versus SMU. And then if the Texas Supreme Court has not directly ruled on the issue, then this court makes an eerie guess. But in doing so, there typically treats Texas's intermediate court's opinions as the strongest indicator of what the Texas Supreme Court would do, absent some compelling reason to believe it would reject the lower court's reasoning. Here, the four lower court opinions we've cited say that direct evidence of a liquid's condition is evidence of the passage of time. It does beat summary judgment on the constructive notice rule. And a jury then can decide whether or not the liquid was on the floor long enough for the retailer to have constructive notice of it and then warn or make safe. The best evidence that the Texas Supreme Court would not reject that reasoning and would actually follow it is found on page 817 of the Walmart Stores Inc. versus Reese case from 2002, in which the Texas Supreme Court said, nor was there evidence concerning the condition of the spilled liquid that might indicate how long it had been there. That is an indication that the Texas Supreme Court very likely would follow the reasoning in Hernandez, Kofall, McCaslin, and Bolton rather than reject it. And so then the question becomes, did the plaintiff below, Ms. Siegler, introduce some evidence that would indicate how long? Let me ask about the Texas Supreme Court decisions. It does seem that they've, you know, since the 60s, you're relying on these cases from the 60s, intermediate courts. It does seem to me the Texas Supreme Court has tightened the requirements, made them more stringent for plaintiffs to get to a jury. I mean, in particular, what about the Corbin case, Corbin versus Safeway with the grape? And the court seems to say, if it's 50-50, that's not enough, which I think that's hard. How does a court know the evidence is 50-50 or the inferences are 50-50? But we take state law as we get it. So how do you distinguish a case like Corbin that involved the grapes where the court said, you know, it may have occurred after the grapes fell or before, we don't know? There, Your Honor, I think you have to go. Well, first of all, of course, yes, it's true that McCaslin and Bolton were both 1960 cases, but Hernandez was 77 and Cofall versus Randles was 2004. So they're not all obviously from the 60s. But then second, as to the Corbin case specifically, there were really three, well, really two different kinds of theories there. One was whether the theory was the specific danger, that is the grape itself, versus the negligent activity theory, which is the whole setup. That is, how the grapes were displayed made it more likely that they would spill on the floor and not be cleaned up in time, et cetera. I don't know really how to say it other than to say that these cases do hold that there is some evidence of the passage of time. So the court has said, for example, that some inferences are not reasonable. For example, if dirt gets on the liquid or in the macaroni or whatever macaroni salad or whatever it is, that's not enough because it could have been spilled in the same condition or it could have happened so immediately. Same thing with cart tracks through it. But on the other hand, a change in the condition of the liquid itself is evidence of the passage of time. I hope that answers your question, Justice Costa, but that's the best we can do today, I think. When you say some evidence for the time notice rule, and this may be blurring into the second issue, the evidence you're relying on is prevailing on the sham affidavit. You're not saying the photos you didn't seem to in the brief themselves show passage of time. Is that fair to say? That is fair to say, Your Honor, I do think there were some foundational issues there with the photograph and they could have been solved but they weren't solved and so we're here on the affidavit. And there, the evidence is first, the color. And the second is the, the got touched versus touched it. And the last one was the fact that Miss Siegler was never asked in her deposition about the temperature of the consistency of the liquid. And so, and she didn't have on the date of the deposition, the evidence that would later come in through the Walmart employees depositions that the liquid was hot and yellow and pure liquid as opposed to cold and congealed. We put aside the color and size and you focus just on the word or phrase greasy liquid versus congealed and thick. You know, there does seem to be a contradiction there. How would you speak to that you just doesn't, it doesn't rise, that's just isolating the words as opposed to the larger context. If I'm understanding your question correctly I think the contrast between those two things is actually part of the evidence of the passage of time that is, if it is hot and yellow when spilled as established through the Walmart employees depositions, but it was cold and congealed. At the time of the fall. That is some evidence from which a jury can determine I guess my question is if she had said, it's hot, and then along comes the affidavit and she says cold. That would make it unlikely we would reverse judge McBride's ruling, but here instead she says liquid and then later says congealed cold thick. And is it really just down to whether that's less inherently contradictory. It may be the trouble and slip and fall cases of course is that most of the time the plaintiff does not have personal knowledge of the condition of the liquid at the time it was spilled. If they most likely wouldn't slip on it right so here. She's already fallen then she looks over to say hey what was that that I slipped on, and she sees that it was cold and congealed at that time. But, again, you know this case is a lot more like Kenneth Murray versus bone Clark versus resist a flex from at this court's decision there, and Windsor versus Kaufman County, you know where the distinctions, at most, give rise to a credibility You know the credibility determinations are the purest of jury issues. Self serving quality of an affidavit feature at all into the sham affidavit rule or not. I don't think it should your honor because, first of all, of course, there's no prohibition against self serving testimony in rule 56 but then also every single statement that a party makes in testimony that is supposed to support or oppose emotion is by definition going to be self serving. And so I think what really matters is whether the, whether it is direct testimony and based on personal knowledge and then non conclusory which I think is the other problem, or maybe the better answer to your question. Some of the questions that Miss Siegler was asked in her deposition are necessarily conclusory. They're either legal questions like what what is evidence and what's not evidence, what tends to show what doesn't tend to show you know what proof. Do you have well the lay person is not going to be able to answer those questions in the same way as they would say if Walmart's counsel had said, you know, what was the temperature. What was the consistency, or when she says it was a. She says it was a liquid like, and then they, you know, it was like greasy, etc. And then the person doesn't come back and say well what do you mean, kind of, what do you mean like, what do you mean, ish. What do you mean, you know, can you be more specific, or they don't ask the questions, as I said before, like, well what was the temperature. Right. Or what was the consistency those questions never get asked, and a lay person is expected to pull those out of the air. When the council says, Do you have any proof as to the passage of time, and maybe to give you an example, say in an employment case, an employer's lawyer is very likely to ask this question. Do you have any documents or information tending to show this employer discriminated against you on the basis of race, almost every lay person is going to think, if I don't have an email saying let's fire Bob because he's black, then the answer is no, I don't have any, any documents or information proving that's the motive. But the law is that proof of discrimination is where they qualified for the position that they suffer an adverse employment action. Are they in a protected class, and were others outside the protected class treated differently. And so now there's probably 500 to 1000 documents that when put together would tend to show that the action of the employer was discriminatory and no lay person is going to be able to pull that out of the air in a deposition pretext of course Taylor assume the affidavit is comes in assume we we disagree with the district court on that and consider the affidavit, and you get the evidence that it was congealed when she fell. How long does it take chicken grease to congeal. And do we have any evidence, and do we have any evidence of that. Well, the way I read these cases your honor Hernandez Kofal McCaslin Bolton is that is a jury question that that that the jury decides based on their own common sense and their everyday experience, whether that was long enough the requirement is there must be some evidence of the passage of time. And you I know it's, I know there's no firm amount of time but I mean is there a ballpark you think it has to be are we talking five minutes 20 minutes. I don't think the Texas cases say that there is any that there are any magic words, or that there has to be any specific length of time and there just have to be some evidence of the passage of time. And again just going back to the other examples, the dirt, or the car, you know the shopping cart tracks whatever there too many other inferences that can be drawn there, but a change in the condition of the liquid itself. The only inference that can be drawn there is the passage of time. And again, you know here of course Walmart's own employees testified that it was that it was hot being taken from a hot rack customers messy spill a lot. All right next to the hot counter at the exact spot where she slipped. And then they also testified that they're supposed to do this rounding, you know that they're supposed to be making these regular checks and it really would be a fact issue for the jury to decide whether from the time chicken grease is hot to the time it is congealed is is a sufficient amount of time for Walmart to be aware of it. Thank you. Again, I would just say that this case really does not fall into the into the types of cases where a sham affidavit has been termed to have occurred. In particular, perma research for example, you know permis president Perina was questioned for four days in his deposition, including questions by his own lawyer, and the court said okay that's a sham that they never brought up this alleged conversation where Mr person said singer never intended to perform on the contract in the first place. Similarly, you know in Hacienda records you've got probably received $1,000 advance versus never received any advance couldn't remember whether Hacienda paid him royalties versus never paid him any royalties or dough versus Dallas ISD told the principal about the abuse in 1984 versus principles on the phone never talked to her versus going back to the original story, Southwest sws directors, same factual testimony on which they were questioned at length some say others say thoroughly, and this just is not that other examples, the head word case versus Harris County Hospital District from this circuit in 2014. I can't remember but it could have been one to three hours of uncompensated overtime versus affidavit where they said no it was 12 uncompetent uncompensated overtime a week. And then the lower court rulings. Don't recall if I saw any wet floor signs, I saw no wet floor signs. Don't recall seeing Walmart employees nearby. I saw several employees in the same general area. And I just, when you line the facts of this case up with those cases it doesn't match but when you line it up with bone Clark and Windsor versus Kaufman County and Sanchez versus young county, it does the court has to consider all the evidence before it and making this term and some passage of time is evidence. Thank you. You have five minutes on this. Good afternoon, may it please the court. My name is Catherine L rich and I do represent Apple a Walmart stores, Texas, LLC and I'll refer to Apple as Walmart in this argument today. The heart of this dispute involves whether or not Walmart had constructive knowledge of the chicken grease on the floor. This is a slip and fall premises liability case in Texas law is well settled that the premises owner is not an insurer of the visitor safety, and while the premises owner must exercise reasonable care to keep the premises safe the duty is not absolute. So there must be evidence of actual or constructive knowledge and here, there is no dispute that there is no actual knowledge so the case does turn on constructive knowledge. And this is the element that we challenged and the motion for summary judgment. So taking a look at constructive knowledge. There are three elements. One is the proximity of the employees to the before you go through just procedurally remind me, the motion for summary judgment was filed simultaneously with the motion to strike, or was the motion to strike later. I believe it was filed simultaneously. No, I'm sorry, are you talking about this, excuse me, Your Honor, are you talking about this, the motion to strike the affidavit. Yes, that was filed after the affidavit was filed. It was on the objections to the I was trying to look in the record I don't think I think the district court ruled quickly enough on the motion to strike we never got a response at that level from Miss Siegler Is that correct. Correct. Okay, go ahead. That's why I have some questions about sham affidavit ruling but go back to where you were. Correct, Your Honor, Your Honor, the, the objections and the motion to strike the affidavit was filed as part of the reply and response to the motion for summary judgment so that would be the correct timing on that. As I was saying, though, there are three elements to the constructive knowledge we have the proximity element we have the conspicuousness element and the length of time element, the length of time, the alleged condition existed on the floor. This is the challenge element and when you look through Miss Siegler's briefs. Most of the evidence that they are referring to go to the elements of proximity of the employees or conspicuousness of the condition and not necessarily the length of time. And what Miss Siegler has to offer on the time element is nothing other than the possibility, based on circumstantial evidence not direct evidence circumstantial evidence involving multiple inferences, but a mere possibility that the condition existed long enough is not sufficient. You must go beyond possibility and show that more likely than not, the condition existed long enough to give Walmart a reasonable opportunity to discover it. It's not just a passage of some amount of time or any time. It's got to be enough time to give Walmart that reasonable opportunity to discover. Meager substantial evidence to infer time notice rule from which equally plausible but opposite inferences may be drawn is speculative and legally insufficient. Miss Siegler or Mr. Taylor in his argument talked about Miss Siegler's affidavit to show a change in condition to try to meet this time element. But Siegler's position requires the court to accept a slew of inferences based on a speculative affidavit. First, you have to infer that the grease fell from the hot case. While Mr. Taylor suggests the grease fell from the hot case and suggests that Walmart employees said it did, there is no evidence of that. In fact, I encourage you to review the deposition testimony that is in this record. There is absolutely no evidence saying that the grease fell from the hot case. There was no evidence of any spill. But in all these cases, the corpse are saying the ones that get past summary judgment, I mean, you have a liquid substance that appears to have dried and so you're allowing that inference that it came from, it spilled in the store. You can infer that it spilled somewhere in the store, but you can't infer in this case that it spilled from the hot case. There's no evidence of any spilled chicken container or grease trailing from the hot case that would support perhaps an inference that that's where it came from. That's right. I thought it was right under it or right next to it. The actual grease was under it, but there's no evidence to say that it came from the hot case. It could have, and there's additionally no evidence that it was hot when it fell. So first you have to infer that the grease fell from the hot case. Then you have to infer that the grease was hot when it fell. There's no testimony from the Walmart employees that said that it was hot when it fell. And although Ms. Sieger seems to suggest that she does not need to testify to the exact temperature, she must have some evidence that it was hot before it fell and then it cooled on the ground. You also have to infer that the grease cooled and congealed on the floor when it dropped. And this is important. Justice Costa, you had indicated the Texas Supreme Court's opinion in Corbin talking about these sorts of things. The Texas Supreme Court's case in Corbin and other cases cited in our brief explain that if the change in the condition could have occurred before the fall, the evidence of the change condition is too speculative because it requires an inference upon inference. Moreover, Siegler's testimony does not indicate that part of the chicken grease was drying and part of it was not. She just indicates that it was cooled and congealed. You also have to infer the amount of time it takes for the grease to cool and congeal. Judge Costa, your question was right on point with this issue and this inference. You have to infer the amount of time it takes for the grease to cool and congeal because there's no evidence that would explain that. And you have to infer that the amount of time for that cooling and congealing process is sufficient, is a sufficient amount of time. And more likely than not, the chicken grease would have been discovered. And that's important. Again, it's not just any amount of time that's passing. You've got to, the plaintiff has got to show that this amount of time was sufficient enough to give Walmart notice that more likely than not, it could have, should have discovered it. And while a jury of lay individuals may know approximately how long it takes for ice to melt or vomit to dry up and some of the other cases cited in the briefs, that does not necessarily equate to a jury being able to tell you how long it takes for grease to congeal and that this would be enough time for Walmart to have constructive notice. And the record evidence is bare on this issue. The cases cited by Siegler, the first versus Bolton case and the first versus McCaslin case, in those cases, each of the individuals who were injured had specific experience with a similar substance that had fallen on the floor and knew how long it took for that substance to dry up. For instance, one of the cases involved grape juice and the injured party testified that she had worked in a grocery store. She had seen these grapes and crates before and seen juice spill from it and knew it took approximately 30 minutes to dry. In the other case involving chow chow, the injured party had indicated that her children had dropped chow chow in her kitchen and it took about an hour, an hour and a half to dry up. Siegler did not give us any information in her affidavit on that issue. We do not know how long it would take. So there are approximately five inferences here and the case law is clear that a non-movement is entitled only to a reasonable inference and an inference is not reasonable if premised on multiple inferences. So some suspicion linked with other suspicion only produces more suspicion and it's not the same as evidence. Courts will not infer constructive notice for purposes of summary judgment where the plaintiff's allegations are no more likely than any other potential scenario. And as explained in our appellee's brief, there are a number of scenarios that could have existed to cause the grease to be at that location that would not support an inference that the chicken grease was hot when it fell, that it fell from the hot counter and landed in that spot. Additionally, Ms. Siegler had relied on the deposition testimony of the store manager and employee based on some photographs, but it sounds like from Mr. Taylor's argument that they are no longer pursuing that theory and that's correct because the district court had found that evidence was speculative because the photos had been unauthenticated. Siegler has not shown, even by some circumstantial evidence, that the changing condition likely could only have occurred on the floor, just like in Corbin and in its progeny, changing condition evidence is sufficient if the changing condition could have also occurred before the fall. There simply is legally insufficient evidence to move from a possibility to more likely than not the chicken grease would have been discovered in the amount of time it was on the floor. Additionally, when we look at the evidence that Ms. Siegler cites, she does cite her affidavit solely and that affidavit as the district court found was a sham affidavit. Now, Siegler argues that the district court abused its discretion in ruling that it was a sham affidavit, but the district court did not abuse its discretion. An affidavit is a sham affidavit if it contradicts a witness's prior deposition testimony without explanation as to the change in memory or the testimony, and the district court found that this affidavit clearly fell within this rule. Such ruling was within the district court's discretion and it should not be disturbed. We've outlined in our brief the testimony that cannot be reconciled in Appley's brief. Justice Higginson, your question with respect to the congealing is set forth in our brief as well. That's particularly important because in her deposition, she described the chicken grease as liquid. Yet in her affidavit, she says that it's congealed and thickened up. The definition of congealed is completely opposite of liquid. Now, Ms. Siegler says she did not understand the questions or the terms. Of the four identified by the district court, you were focusing most on that tension? Yes, Your Honor. We've listed out several others, but I'm illustrating and focusing today on that one because that seems to be the most contradictory with respect to the fact that when she describes the chicken grease in her deposition as being liquid and then in her affidavit as being congealed, those are just completely opposite terms. But yet she doesn't in her affidavit explain why she has a different assessment of the consistency of the liquid. I mean, there is a grossness factor, but I mean, you know, grease does have that odd gelatin-like quality. There isn't really a spectrum of solid to then jelly-like and then it gets hard. Congeal is a word open to many meanings, I guess. Well, the term here used in her affidavit, she said that it thickened up, it had cooled and congealed. That is quite the opposite of how she described it in her deposition as being liquid. Here, Siegler's affidavit goes beyond just mere supplementing her deposition. What about the counterargument that when you look at the case law, it's often truly contradictory, sign, no sign, don't remember, now do, to try to describe something with antonyms versus not as to something solid state. It's just, what's your best case that really gets into that world where lay people don't use precise words? What's your best case, if you were to point to us, for that being a factual contradiction? Your Honor, I would encourage this court to look at Free v. Walmart v. Louisiana, another specific case that came out recently in 2020. It's cited in our brief on page 2728 that talks about the sham affidavits. The Benedicti case that's also cited in our brief, I don't have the page number with me, also describes sham affidavits. But even if this court were to find that this affidavit was not a sham and that the district court abused its discretion in finding it's a sham affidavit, the district court also ruled that Siegler's testimony in the affidavit concerning the length of the time that the grease had been on the floor was, based on the looks of it, was speculative. Siegler does not challenge that finding on appeal. She does not argue anything about this finding that it was speculative. And the evidence was indeed speculative. So this court could still affirm the summary judgment, even if the court finds that the affidavit was not a sham. What's speculative if someone says, I saw it, it was congealed? I mean, she saw it with her own eyes. I guess I don't understand the spec. It's speculative how it got congealed, how long it took to congeal. But that's just an eyewitness observation. What's speculative about it? Your Honor, what's speculative about it is the way it's being used to show the time notice rule. While she might say that it's congealed in her affidavit, she does not say that it was hot before it fell. She does not say that it cooled on the floor. She does not say how long it takes for the chicken grease to cool on the floor. And she does not give us any evidence on that with respect to the timing. And that's what's important. Right, but that just goes back to the summary judgment issue of whether, even if you get in the evidence that it's congealed, that requires too many inferential leaps to get the case to a jury. I don't think that means you, I thought you were saying you exclude, even if it's not a sham affidavit, we can't even consider her comment that it was congealed because that's speculative. Maybe I misunderstood. I thought you were saying, I thought you were still on the issue of the admissibility of the affidavit and saying speculative was another basis for not considering it. Your Honor, it's not necessarily the inadmissibility of it. The court said that it did not, even if you look at the affidavit, even if you were to consider the affidavit, the testimony the court found was speculative and speculative as to being able to show there was a sufficient amount of time for constructive knowledge. Just back to the summary judgment issue. Right, because she doesn't include any other evidence with respect to showing that Walmart would have had enough evidence to where it should have discovered the condition. Additionally, Ms. Siegler had relied on in her briefing, although it did not focus much in the argument today, about various other inferences that it tried to argue to show that Walmart had constructive notice, such as zoning policies, cleaning as you go, the proximity of the employees, having to constantly look for spills, and that sort of argument. As we've explained in our brief, all of these things go to the other elements of proximity or conspicuousness of the condition and not as to time notice. We've cited some key cases there, the Walmart versus Reese case that I think is very instructive on these issues, as well as the Murray versus Chick-fil-A case that is very instructive on the issue of cleaning and inspecting, and if they had inspected or cleaned more, they should have seen the condition. The Murray versus Chick-fil-A case talks about that, and there was actually employee testimony in that case that said that if the employees had been cleaning the restrooms, they would have seen the spill, and the court held that this evidence does not go to time notice. So I would encourage the court to put that evidence to the side, because what is at issue here and what we really have to focus on is the time notice, how long the chicken grease had been on the floor, and what evidence we have of that. And we submit to you today and in our briefs that there is no evidence, and certainly no legally sufficient evidence required of this time notice element. If there are no further questions, I will cede my time back to the court. It looks like I only have a couple of minutes left, and I'll conclude. Applebee's respectfully requests that this court affirm the district court's granting of the summary judgment. Thank you, Ms. Arden. Thank you. Mr. Turner, you have five minutes. Yes, Your Honor. If I could go first. The reason the zoning isn't being talked about a lot is because that is evidence of a standard of care, and since the only issue raised in the MSJ was the time notice rule, we didn't weigh as heavily on that. However, it does factor in, I think, Justice Costa, to your question, which is how long is enough? So let's say that the zoning policy is some evidence of what is reasonable for a retailer, then how often should they be looking? Well, the testimony here is the Walmart employees can see the spills in the deli area even when they're behind the counters, and that when they see a spill, they should stop what they're doing and clean it up immediately. That's the evidence that's in the record. So then the spill shouldn't have to be on the floor very long. And so there, the fact that it went from hot, liquid, as testified to by the Walmart employees, the hot case is the busiest counter, people drop chicken sometimes, they spill chicken in front of the hot case where she fell, that's usually where they are, that kind of evidence. It's not much of an inference from there that this is where the chicken grease was spilled, it was hot when it was spilled and liquid when it was spilled, and then you've got the direct testimony from Ms. Siegler herself, which is it was cold and congealed by the time that she actually slipped on it. And so that's how the zoning factors in because it wouldn't take much passage of time then, if Walmart's employees do set the standard of care. Going then to the personal knowledge issue, personal knowledge is not required. And in part for the reason I said before, which is that most plaintiffs do not see the substance that they're about to slip on. If they did, they wouldn't slip. But then the same thing is true that most of the time the stores employees are going to be able to give you, well, this is what usually happens, this is what it usually looks like, et cetera, which is how I just described it, but they also are not going to have direct knowledge that on this day when this slip was made, I mean, when this spill was made, this is exactly what it looked like, because if they'd seen it, they would have cleaned it up or warned the plaintiff not to slip on it. But slip and fall cases are viable, and they must be viable because of some evidence of the passage of time, which is what we have here. Coming just briefly to the speculative issue, you have to draw a distinction between speculation as an evidentiary objection, which in this case was waived. So the issue of when she says it was congealed, and then she says like it had been there long enough to cool, et cetera, any evidentiary objection on that was waived. So that is in the summary judgment evidence. And then the next question is, okay, substantively in Texas law, is that enough? These cases that we've described show that it is. If there are no more questions, I'll also yield my time back by simply saying to the court that the court should rule that the trial court abused its discretion in aggressively applying the sham affidavit doctrine and then also failed to follow Texas law. It should have denied the summary judgment, and so its granting should be reversed. Thank you, Ms. Carroll. The case will be submitted. We'll call the next case for the day when we get the proper notification.